case number 2337. You can lower that if you want. Thank you. Lower the whole thing. On the right side there's a switch.  Okay, great. Okay, great. Good morning. My name is Randa Mayer. I represent the appellant, Abid Naseer. We're here on one issue that's related to an amended judgment that was issued by the 10 from the charges based on the Davis case in the Supreme Court. Our position is that the district court's resentencing of Mr. Naseer from concurrent to consecutive sentences on counts three and four, which were not part of this 2255 motion and are not related, was not merely ministerial, and therefore the judge should have conducted a de novo resentencing. Let me just ask you, counsel, we have a lot of law about the discretion a district court has upon granting of a habeas, and you've couched this as that the district court should have granted de novo resentencing. Isn't it also possible that one thing the district court could have done was a purely ministerial change? You're arguing that is not this, but that's the government's theory, right, is that somehow the change from consecutive to concurrent is just a correction. And so no additional hearing would have been needed. That was an option to the district court. I understand the argument being that this was not that, but that is available, right? The district court can simply correct a sentence without a full resentencing. Right. So had the district court merely vacated count 10 and left the convictions and the sentences on counts three and four undisturbed, no de novo hearing was necessary. Okay. So it's because the district court elected to make what had a substantial effect on the actual practical sentence to make that change that the district court was then required, in your view, to have this full resentencing. Correct. Yes, Your Honor. And in fact, Mr. Nassir had the district court left three and four as they were and dismissed or vacated count 10 only, Mr. Nassir would not be incarcerated today. And he still remains incarcerated. So Judge Deary was the original sentencing judge. Yes. Didn't he make it clear that he thought 40 years was appropriate? The only reason he ran the sentences concurrently the first time around was it didn't matter to getting the 40-year sentence. And so this time around, to achieve what he thought was an appropriate sentence, he made the two remaining counts, the sentences on those two counts, consecutive. That was his reasoning. Yes, that was his reasoning. Why is that an abuse of discretion? It's an abuse of discretion that he did not do that in a de novo resentencing. Why did he need a de novo resentencing if he was the original judge and it was all consistent with his original thinking and the sentence indeed was reduced from 40 to 30 years? Because under CASIO, our interpretation is that there are two things that happened in that case, one that there was a different judge but also that the sentence was not merely ministerial or an empty formality. And in this case, it was not an empty formality. It had consequences. These two counts had nothing to do with that other count. If Judge Deary wanted to impose consecutive sentences, he should have had a de novo resentencing. He could have- 2255 and our decision in Pena give the district judge a fair amount of latitude in how to do this, right? Correct. But our view is that CASIO has refined that and that under CASIO, while neither Pena or CASIO defined what strictly ministerial was and perhaps this court will today, that term hasn't, to my knowledge, been defined. And this case is a case where we would argue that- Even assuming it's not merely ministerial, I think you're right about that. I don't think it's merely ministerial. But wouldn't he have the discretion in these circumstances not to do the whole thing all over again? Because it was pretty clear what he thought was appropriate. Well, I respectfully disagree because again, under CASIO, there was a situation there where it was a new judge, but again, part of what the concern was was that the judge did not look at the evidence that showed that he was no longer the person he was at the time the judge had sentenced him. This judge, Judge Deary, focused only on the offense conduct. Mr. Nasir had submitted a whole bunch of other materials that showed that he was no longer who he had been 15 years earlier when he was only 24 years old. And Judge Deary didn't consider any of that, and a lot of that would have been considered had there been a de novo resentencing. Why do you say he didn't consider any of that? He lost- He had the papers in front of him? But from his comments and from the opinion, I shouldn't say his comments, from the opinion- His comments in his opinion were that he didn't think things change in the nature of the threat to the public the first time around, when he said this was a very smart person, intelligent person, and so why is that an abuse of discretion? Because the proof that Mr. Nasir submitted that Judge Deary would have had to look at, and he would have also had to go through the 3553A factors at a plenary resentencing, and he didn't do that here, he didn't have to, but had he done so, he would have had to consider the fact that Mr. Nasir is currently in a low facility. He started out in a medium, he's now in a low. He would have been qualified to go to a camp or to a halfway house, but he's an illegal immigrant, so that's why he's not there. His new pattern- Under your view, then, you would have us read the four options in Pena narrowly, so that the last category of correction has to be ministerial and can't involve anything more than that, in terms of exercising discretion. I would, Your Honor, specifically because in CASIU they say ministerial, but they also say empty formality, and it was nothing- But the whole point of articulating those four options in Pena was to actually explain the breadth of the judge's discretion in how to handle a situation like this. So that's an odd way to interpret that category. Well, I don't know what you would define as strictly ministerial if this wouldn't be strictly ministerial. I mean, if this was strictly ministerial. In other words, were the judges- Correcting a sentence is the- Strictly ministerial would be addressing the sentence that was under consideration and that was vacated and just vacating it and issuing an amended judgment without that sentence in there. What happened here was the judge went back and corrected two other sentences, and imposing a consecutive term rather than a concurrent term is changing that sentence. It's changing it from 15 years to 30 years. And in order to do that, there should have been a de novo resentencing where a new PSR would have been issued, where Mr. CASIU's 3553A factors would have been considered. So any exercise of discretion under the fourth category of correcting beyond ministerial is, in fact, an abuse of discretion. That would be- Yes. That would be- Okay. You've reserved three minutes for rebuttal. Yes.  Thank you. Thank you. We'll hear from the government. Thank you, Your Honors. May it please the court. Nicholas Moskow from the United States. Ten years ago, Judge Deary thoughtfully weighed all of the relevant factors in this case, assessed the defendant's character, ascribed it substantial weight, and imposed a sentence of 40 years, believing that to be the appropriate sentence in light of the defendant's history                    and characteristics and the grave nature of the crime that he committed. Judge Deary was able to impose that 40-year sentence on one count, and it was immaterial that the sentence on the two material support counts were to run consecutive or concurrent. It was an afterthought clarified after imposition of the sentence, and he checked that they would run concurrent. At that time, none of the parties foresaw that the defendant's effort to bomb a crowded shopping center on behalf of al-Qaeda would be classified as a nonviolent crime, such that 924C did not apply. Once the 40-year sentence was vacated, Judge Deary did his best to give effect to the reasoned judgment that he'd already imposed and corrected the two 15-year sentences to run consecutive rather than concurrent. So, Counsel, you just mentioned that it was sort of an afterthought. Nobody was really focused on these two 15-year sentences in light of the 40-year sentence, which is totally understandable. Isn't that, if anything, a reason for de novo resentencing? Because now that I hear you and I see in your briefing the focus on what actually happened in count 10. I get it. But it's not a conviction anymore. And so if everyone was focused on that count 10, isn't that a good reason to say, now that we're only focused on counts 3 and 4, let's look at those freestanding and independently and really talk about what the right sentence is? No, Your Honor. Judge Deary was not focused on count 10 at the initial sentencing. He was focused on the whole course of conduct. You just told me, though, that 3 and 4 were an afterthought. You literally said it was an afterthought. Your Honor, the decision as to whether to run the two 15-year sentences consecutive or concurrent was an afterthought because— So nobody was focused on whether that was the right thing to do at that time. Your Honor, the court was very focused on the appropriate sentence and determined that the appropriate sentence was 40 years. That was true irrespective of the nature of the statutory crime. He assessed that the full course of conduct in light of the defendant's character merited a 40-year sentence. And on resentencing, he reaffirmed that that was the way he thought about this. Judge Deary wrote, although Nasir's counts of conviction now change with the vacator of count 10, the conduct in which he engaged and for which this court deemed a 40-year sentence appropriate has not, for having joined al-Qaeda and having plotted to bomb innocent civilians and to inflict mass casualties on behalf of al-Qaeda. Nasir is as deserving now as when initially sentenced of the statutory maximum on his two 2339B convictions. That's at A132. Clearly, Judge Deary's focus was and has been on the total term of imprisonment. And when he corrected the two sentences to run consecutive, that was to mitigate the effects of the vacator. It was purely done in order to ensure that he was as close as possible to the judgment that he'd already reached upon a thorough and careful assessing of all 3553A factors. So that sounds like a substantive analysis, not one that your friend is arguing, which should be strictly ministerial. What's your response to that? Your Honor, first, the court did not, in Pena or in Khazu, say that in cases in which sentencing is not purely ministerial, it has to be a de novo resentencing, and your Honor correctly pointed to cases in which courts can correct the sentence. As the government points out in its brief, Medun Janin is a case in which the court exercised some discretion. Your Honor wrote the summary order in Ayad, affirming Judge Kaplan's decision not to conduct a de novo resentencing. Certainly, there are times in which the court knows, and particularly where the district judge imposed a reasoned judgment after a careful trial, in this case, Judge Deary was the trial judge, saw the defendant every day representing himself at trial, and balanced the factors carefully at sentencing. He knows how best to give effect to the original judgment. This is not rebalancing the 3553A factors, as Judge Block did in imposing a new sentence in Khazu. This is a careful attempt to try to give effect to the initial judgment, which is different, and which is a correction rather than a de novo resentencing. Based on that... What if he'd gone the other direction? What if it had been a 30-year sentence, and he'd elected to take this opportunity? What if he'd originally given three and four consecutive, so it was 30 years? When this was vacated, the trial judge thought, this is my opportunity, I feel like that sentence was too long. This is my opportunity to switch it, to correct it, from consecutive to concurrent. Would the government have wanted to be heard on that? Your Honor, that would be, rather than trying to give effect to the initial judgment, that would be trying to undo the original judgment. Well, he's trying to correct it. That's the word you're using. This is a correction. Your Honor, the difference there would be, here, the judge tried to mitigate a 25-year windfall for the defendant by making it a 10-year windfall. In Your Honor's example, it would be a 10-year windfall that the judge would be transmuting into a 25-year windfall. That's not the same. Respectfully, Your Honor, that would require... What if the judge had said at the first sentencing, these sentences are way too long, but I'm constrained by a variety of factors, and I feel like I have to give them? I wish I could give less, but I feel like I have to give this sentence. In retrospect, the judge decided that was too long. He can't do that because... What you're saying is that because he said it the first time, this is a terrible crime, which undoubtedly it was, and I'd like to give him as much as possible. He had to give him as much as possible the second time around, and getting there is a mere correction. No, Your Honor. In fact, the judge didn't give as much as possible at the first sentence. He thoughtfully weighed all of the defendant's characteristics. He gave great weight to the defendant's assertion that he was a kind and thoughtful person, with which the court largely agreed, except for the defendant's very serious crime. But putting that to one side, no. The rule that the government would propose is that when a court is trying to give effect to the initial underlying assessment of the 3553A factors, rather than to reevaluate them, it's more akin to a correction. And the vacation of the actual conviction is irrelevant to that calculation? In this case, Your Honor, where it doesn't... It's not prompted by a change in the conduct, and the sentence was purely reflective of the conduct. It's reflected by a Supreme Court declaration that the law is different than we thought it was. Yes, Your Honor. But, again, the judge was very clear that the sentence wasn't predicated on technical violations of whether or not the bomb that he was planning to use was in furtherance of something that was categorically a crime of violence, or whether it was simply an attempt to blow up a number of people at a shopping center over Easter weekend. Either way, the judge believed a 40-year sentence was appropriate. And either way, when the judge sought to give effect to that prior judgment, which, again, he reached after a fair sentencing process 10 years ago, any attempt to give effect to that underlying judgment doesn't require a de novo resentencing. Should the judge choose to weigh the factors differently, again, as Judge Block did in Kazoo, then that would require a de novo resentencing, but that's not what Judge Dury did here. What about the defendant's right to be present? Is that, again, not necessary here because this is a mere correction? Yes, Your Honor. And 2255 specifically has language giving the district judge the authority to correct the sentence without requiring the defendant's presence. So all of this hinges on the idea that this is a correction? Your Honor, that it's a correction, that the judge has substantial discretion in determining how to proceed after vacator of account pursuant to Section 2255. The discretion which is given to the district judge by statute, which this court has recognized in Pena and other cases thereafter. This change, insofar as Judge Dury did, imposed a change that had a significant effect on the defendant's life. That change was foreseeable and was an effort to give effect to the underlying judgment of the district court rather than some sort of a new balancing, new sentence, or anything predicated on new information to the judge. The judge considered what was before him and determined that it was unlikely to yield a change in the sentence. This is similar to the analysis that Judge Kaplan conducted in Ayad and the idea that a new sentencing proceeding need not happen if it would be an empty formality is not the same as saying that the change in sentence is an empty formality. How does the judge know it's going to be an empty formality until he sees the person and hears from them? I can tell you, I often took the bench as a sentencing judge thinking I was going to give one sentence and ended up giving a different one because those presentations can change minds. How can the judge decide in advance it's an empty formality? Your Honor, again, having seen the trial, having seen the defendant, and having made the assessment that this defendant is someone about whom he knew all of the information that was being put before him, Judge Dury was well equipped to make that judgment. Judge Dury specifically wrote, Nasir has asked the court to reduce his sentence to 15 years, setting his record of academic excellence and good conduct during his years in prison, but these facts are not surprising given the qualities Nasir displayed throughout his trial and initial sentencing, and do not alter the sentencing calculus. That's again, A132 in the record. Judge Dury was well aware of the qualities that Nasir had, of the qualities that he displayed both at the initial sentencing and that he sought to portray to the court on resentencing. Certainly, Your Honor, any sentencing proceeding could arguably be something other than an empty formality, but the sentencing judge who has engaged with these issues and has engaged at sentencing with the defendant is best equipped to know whether it's worth invoking all of those resources, hailing everyone back into court, and going through the whole process of a de novo resentencing. In this case, Judge Dury correctly decided, and it was not an abuse of his discretion to decide, that bringing everyone back to assess whether the two 15-year sentences should be consecutive or concurrent would be an empty formality because anything short of a 30-year sentence would be a miscarriage of justice. For these reasons, Your Honors, the government would ask that the court affirm Judge Dury's decision. If there are no further questions, the government is prepared to rest on our submission. Thank you, counsel. We'll hear rebuttal. Your Honor, we, Your Honors, we reiterate our position that this was not a mere correction. This was a substantive change in the sentence, and in terms of assessing Mr. Nasir's character, that was not done as it should have been had there been a de novo resentencing. This was a 15-year time difference from when Mr. Nasir was first in front of the judge and now, and he went from being 24 years old to 38 years old, where a person changes dramatically. He had amazing information that he attached, including the fact that if he was such a dangerous individual, why would he be eligible to go into a halfway house if he had been legally in the United States? That should have been considered by Judge Dury. Didn't Judge Dury address that? He referenced that. He referenced he looked— There's no remorse. Nothing has changed. The conduct, at least, remains the same threat. He referenced it in general terms, but there's no indication that he specifically looked carefully at these materials as he would have had there been a plenary resentencing and had Mr. Nasir either— Do you think on a plenary resentencing, those materials would have persuaded the same judge to do something different? They very well could have. This judge said three times prior to imposing sentence that he was at sea when it came to what to do about Mr. Nasir, who had no criminal record and who was a good guy until this incident and was a soccer player and had been a student. And he mentioned three times in three different places before imposing sentence he was at sea about what to do. So yes, I believe that had Mr. Nasir been given the opportunity that he deserved, either to represent himself pro se or have an attorney come in and had a new PSR and advocated for himself in front of the judge or had somebody advocate for him, that Judge Dury may very well have decided to give him a different sentence. Thank you. Thank you both. We'll take the case under advice.